IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR NO. 2:15cr340-CEM-SRW |
| | ) | |
| ALTA LEE JUNIOR WILLIAMS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

On January 8, 2016, the undersigned entered a recommendation addressing the final ground for suppression raised by defendant in his motion to suppress, which related to alleged material omissions in the search warrant affidavit in this case. Doc. 39 at 15-17, Doc. 56. The district judge adopted this recommendation on January 19, 2016. Doc. 70.

The Magistrate Judge held a hearing on the remaining issues on January 11, 2016. For the reasons set out below, the undersigned recommends that the remainder of the motion to suppress be denied.

Facts

On July 23, 2015, Drug Enforcement Administration (DEA) State and Local Task Force officers made arrangements for a confidential informant (CI) to make a controlled buy of cocaine from defendant Alta Lee Junior Williams in the vicinity of Clio, Alabama. The CI set up the transaction by placing a monitored call to defendant's cell phone number. For various reasons, the transaction was subsequently called off, and the CI and defendant made plans to meet for the same purpose the next day.

On July 24, 2015, after the CI placed another monitored call to defendant's phone to arrange the drug buy, officers met the CI just outside of Clio, Alabama and provided him with $875 in

1

government funds, as well as hidden video and audio recording equipment. An undercover officer traveled with the CI on the way to defendant's residence to make the purchase. However, just before they arrived, defendant contacted the CI by phone and arranged for the transaction to occur at a different location – a trailer on county road 15 in Clio. When they arrived there, defendant instructed the CI to get in his own car, and told the undercover agent to stay back.

Defendant drove to another location out in the country on the side of the road. At this point, the CI's video recording equipment was working, but the audio was not. No cocaine was ever provided to the CI (or later found in defendant's possession). Instead, the co-defendant in this case, Antonio Marquis Richards, pulled up at the site in a pink vehicle. He approached the defendant's car on defendant's side, said "I'll be right back," returned to his vehicle, and came back with a Tech-9 style pistol. He pointed the weapon at the CI and said, "Give it up." The CI got out of the car with his hands up and gave Richards the money. Richards told the CI that if he came back, "it could be murder." Richards got back in his car and left the scene.

The CI texted Task Force Officer Doug Walters, gave him a description of Richards' vehicle and the tag information, and reported that he had been robbed. Walters called the CI and told him to get back to the Family Dollar Store parking lot in Clio to meet the undercover officer. Defendant agreed to drive the CI to the Family Dollar, but first stopped to pick up Billy Gatewood. When defendant and Gatewood arrived at the Family Dollar, officers immediately placed them on the ground, handcuffed them, and took them into custody. Walters patted down defendant for weapons, and directed defendant into the passenger seat of his unmarked vehicle. During the patdown search, Walters found a cellular phone in defendant's possession, which he put on the center console in his truck. Gatewood was placed in a different vehicle.

Task Force Agent Tom Reid got into the back seat of Walters' truck, and Walters drove him and the defendant to a church parking lot on state highway 10 outside of Clio. During the drive, Walters told defendant that this was not a local police department matter, that he and Reid represented the Drug Enforcement Administration and that "we take it very seriously when our informants get robbed."

Thereafter, Walters informed defendant of his Miranda rights and asked him if he understood them.[1] Defendant nodded his head in the affirmative.[2] Walters did not ask defendant any other questions at that time. At the church parking lot, Walters was soon met by other officers. One of them, Sergeant Wiggins, had spoken with Gatewood; Wiggins informed Walters that defendant had told Gatewood that Antonio Richards had committed the robbery. Thereafter, Walters spoke to Gatewood himself and confirmed this information.

Walters went back to his truck and saw defendant's cell phone still on the console. He showed defendant the cell phone and asked if that were his phone. Defendant replied, "Yes." Walters "called out" the number of the phone, and defendant confirmed that was his number. Walters asked defendant if he would mind if he looked through the phone. Defendant said, "Why?" and then, according to Walters, inquired, "What did I want to do, look at his girls?" Walters asked what he was talking about. Defendant asked again, "Do you want to look at my naked pictures?" Walters replied,

---

[1] Defendant's motion to suppress maintains that he was not informed of his rights. The court credits Walters' testimony. Doc. 39 at 9.

[2] At some point after he advised defendant of his Miranda rights, Walters also told defendant, "We got you now, big dog, and you're going to prison for 10, 15, 20 years," or something to that effect.

3

"No, sir, I want to look at who you've recently called." Defendant responded, "I don't care."[3]

Walters accessed the phone and pulled up defendant's recent contacts. He saw a record of a contact to or from someone named "Tonio."[4] Walters told defendant that he was going to send a text message. Defendant offered no reaction. In an attempt to obtain Richards' location so that officers could get him into custody, Walters sent two text messages to Tonio – "Where you at?" and then "Yo" – but received no response. He then phoned Tonio's number either one or two times, and the calls went directly to a generic voice mail. Walters surmised that Richards had turned off his phone. He collected defendant's cell phone as evidence, and neither he nor any other officer attempted to view any other stored digital information on that date.

On the following day, Richards turned himself in. Officers recovered the $875.

Later, on August 6, 2015, the government submitted an application to a Magistrate Judge of this court (Judge Charles S. Coody) for a warrant to search the cell phone, accompanied by an affidavit sworn by DEA Special Agent Marbrae. Later that day, the warrant issued. During the search of the telephone that followed, agents found digital records confirming that defendant had communicated with the CI and Richards before the armed robbery occurred. Doc. 50 at 7-8.

In addition, the government subsequently obtained toll records pertaining to defendant's cellular phone through an administrative subpoena on his service provider. The toll records

---

[3] Task Force Officer Tom Reid recalled most of the conversation similarly, but testified that defendant gave no verbal response concerning Walters' request to look in defendant's phone. The court credits Walters' contrary testimony.

[4] When he drafted his report concerning the incident on December 16, 2015, months after the search occurred on July 24, 2015, Walters recalled the shorthand for Antonio that he had observed in the phone contacts as "Ant"; at the suppression hearing, Walters indicated instead that it was "Tonio." He explained that he had not reviewed the phone records before writing the December report.

4

confirmed that defendant had placed telephone calls to or received telephone calls from phones belonging to the CI and Richards before the armed robbery. Id. at 8.

## Discussion

Defendant's motion seeks to suppress "any and all statements – including providing his cell phone number – made to DEA agents and Task Force officers," "any reference to his phone records," "all records obtained as a result of [the] search warrant," "all 'fruits' of the multiple constitutional violations," and "all information obtained as a result of the information gathered as a result of those violations." Doc. 39 at 19. The records obtained by the government pursuant to the search warrant were addressed in the court's previous recommendation and the District Judge's order. Docs. 56, 70. As to the remaining statements and information sought by defendant, the first question before the court is whether the government actually intends to introduce at trial anything that falls within these broad categories. If not, the motion may be moot.

1. Defendant's statements

The suppression hearing revealed two incriminating statements made by the defendant, both of which linked him to the cell phone from which calls had been placed to his co-defendant, who carried out the robbery.[5] First, Task Force Officer Walters testified that he showed defendant the cell phone that he had removed from defendant's person during a pat-down search and asked if that were his phone. Defendant replied, "Yes." Second, Walters testified that he "called out" the number of the phone, and defendant confirmed that was his number.

    a. Mootness

---

[5] Defendant's co-defendant, Antonio Marquis Richards, pled guilty in this case on January 5, 2016.

The government indicated during the suppression hearing that it does not intend to offer any statement made by defendant in connection with his cell phone into evidence at trial. Thus, defendant's motion to suppress is due to be denied as moot as to these statements. See United States v. Dixon, 2013 WL 4718934, at *1 (N.D. Ga. 2013)(motion to suppress rendered moot by government's announcement that it would not seek to introduce any evidence from cell phone); United States v. Beckford, 2010 WL 1487817, at *6 (N.D. Ga. 2010) report and recommendation adopted in part, 2010 WL 1489970 (N.D. Ga. 2010), aff'd sub nom. United States v. Haile, 685 F.3d 1211 (11th Cir. 2012)(government's agreement not to use any evidence from a seized computer rendered that aspect of the motion moot); United States v. Hughes, 2008 WL 6653543, at *1 (N.D. Ga. 2008), report and recommendation adopted, 2009 WL 2422850 (N.D. Ga. 2009), aff'd, 410 F. App'x 285 (11th Cir. 2011) (denying suppression motion as moot upon government's announcement that it did not intend to use evidence seized in search of defendant's residence).[6]

      b. Miranda[7] warnings

In addition, the court concludes that defendant's statements concerning his cell phone were made after defendant was properly advised of his Miranda rights, and that he waived those rights voluntarily, knowingly, and intelligently. The court credits Walters' testimony – echoed by that of Task Force Officer Tom Reid, who was also present when the statements were made – that Walters gave appropriate Miranda warnings before defendant made the statements in question. Defendant

---

[6] During the same conversation, defendant also made statements concerning the contents of the cell phone – asking Walters if what he wanted to look at on the phone was "his girls," or his "naked pictures." To the extent that these statements might be considered inculpatory, since they too link defendant to the cell phone, it is the court's understanding that the government also does not intend to offer them into evidence at trial.

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

6

nodded affirmatively after his rights were explained, indicating that he understood them.

The court has no evidence before it to suggest that defendant suffered from any intellectual or educational deficit affecting his ability to comprehend either his rights or the consequences of their waiver. It is undisputed that defendant was in custody at this time; he had been detained, told to lie down on the concrete, handcuffed, and patted down by law enforcement prior to making the statements in question, and was in the process of being driven in Walters' truck to another location. However, the court cannot conclude that these circumstances constituted unlawful intimidation, coercion or deception. Although the officers drew their weapons when they arrested the defendant, their guns were holstered when defendant made the inculpatory statements. No threats or promises were made to prompt him to speak. Nothing in the record suggests that defendant was physically touched other than during the earlier patdown search, that Walters used any language or tone of voice indicating that compliance with his requests might be compelled, or that any other coercive activity occurred. Thus, under the totality of the circumstances, defendant's statements are not subject to exclusion under Miranda and its progeny.[8] See United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995)(First, "'the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.'")(citation

---

[8] Accordingly, the court does not reach the Fifth Amendment independent source doctrine, which is urged by the government as an additional argument against suppression. Doc. 50 at 11-13.

omitted).

    2. Cell phone records

        a. Recent contact information viewed by Task Force Officer Walters

Other than defendant's statements, the remaining evidence which defendant seeks to suppress consists of cell phone records. These records take several forms.

        (1) Mootness

First, Task Force Officer Walters viewed certain recent contact information on defendant's phone shortly after detaining him. Specifically, he observed that defendant had been in communication with someone called "Tonio," whom Walters suspected to be defendant's co-defendant, Antonio Richards, identified previously as the robber.[9] When Walters saw the recent contact, he told defendant he was going to send a text message, and proceeded to text Tonio's number twice from defendant's phone. The first message was, "Where you at?"; the second message was, "Yo." Walters received no response. He then attempted either one or two calls to the number, which went directly to a generic voice mail; as a result, Walters surmised that Tonio's phone had been turned off. No officer viewed any other record on defendant's phone on that date.

The government indicated at the suppression hearing that it does not intend to introduce into evidence at trial anything gleaned from Walters' limited search of the cell phone. Thus, once again, defendant's motion to suppress is due to be denied as moot as to the information that Walters observed on defendant's phone concerning his contacts to or from Tonio. See *infra* at 2. In addition,

---

[9] As noted above, Sergeant Wiggins had previously told Walters that defendant had told Gatewood that Antonio Richards had committed the robbery. Thereafter, Walters spoke to Gatewood himself to confirm this information. See also Def. Ex. 2 at 2 ("...TFO Walters was informed that Antonio RICHARDS was the subject that pulled the gun and TFO Walkers knew 'Ant' could be a short form of Antonio.").

8

even if the government did seek to offer these records, the court concludes that they are not subject to suppression because defendant voluntarily consented to Walters' search of his phone, and, in the alternative, because exigent circumstances justified the search of the phone.

### (2) Consent to search

Walters testified that he asked defendant "if he'd mind if I looked through [his phone]." According to Walters, defendant asked, "Why? What did I want to do, look at his girls?" Walter inquired what he was talking about, and defendant replied, "Do you want to look at my naked pictures?" Walters said, "No, sir, I want to look at who you've recently called." Williams then responded, "I don't care," and observed without protest as Walters accessed his recent contacts, found the record of recent communication with Tonio, told defendant that he was going to send a text message, and then attempted to text and phone that individual.

The law is clear that officers generally must secure a warrant before searching a cell phone. Riley v. California, __ U.S. __, 134 S.Ct. 2473, 2485 (2014). Without a warrant, the government has the burden of showing, by a preponderance of the evidence, both that defendant consented to search and that his consent was voluntary. United States v. Ward, __ Fed. Appx. __, 2015 WL 9466246, at *3 (11th Cir. 2015)(citation omitted). The voluntariness of consent to law enforcement activity is judged in light of the totality of the circumstances. Id. (citation omitted). Whether consent is deemed involuntary depends upon the amount of threat presented. Id. (citation omitted). The determination may include consideration of the voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.

Id. (citation omitted). Consent is voluntary if it is the product of an essentially free and unconstrained choice. Id. (citation omitted).

Here, under the totality of the circumstances, the court concludes that defendant voluntarily consented to the search of his cell phone. The defendant was handcuffed and in custody at the time of the consent, but the officers otherwise did not subject him to any form of coercion (other than to suggest that he was in big trouble), and defendant had previously cooperated with them by confirming his telephone number.[10] Defendant was apparently aware of his right to refuse to consent, since he actively questioned Walters about the purpose of the search before indicating that he did not care if it went forward. As before, the court has no evidence before it that defendant's level of education and intelligence in some way compromised the voluntariness of his consent. Finally, with regard to whether defendant believed no incriminating evidence would be found, at a minimum defendant would already have been aware that officers knew from the CI that the CI and defendant had been communicating by phone concerning a proposed drug transaction. Under these circumstances, the court concludes that defendant's consent to the search of his cell phone was voluntary.

As to defendant's suggestion that Walters' use of the phone to text and call Tonio was constitutionally improper, neither effort to get in touch yielded any result and, therefore, there is nothing for the court to suppress, even if it agreed with defendant's view. The exclusionary rule

---

[10] According to the government's response to the motion to suppress, defendant himself also had voluntarily told officers the identity of the robber. See Doc. 50 at 6, 16. However, the government failed to elicit this testimony at the hearing. The DEA-6 reports offered into evidence both indicate that "[a]fter speaking with Williams and Gatewood, it was determined that Antonio RICHARDS was the subject that pulled the gun and robbed the CS." These sentences have no subject and are framed in the passive tense; it is impossible to determine from them whether defendant himself told any officer about Richards' involvement. See Def. Ex. 2 at 1, def. Ex. 3 at 2.

forbids the use of improperly obtained *evidence* at trial. See Herring v. United States, 555 U.S. 135, 139, 129 S. Ct. 695, 699, 172 L. Ed. 2d 496 (2009). No such evidence actually resulted from Walters' unsuccessful efforts to communicate with Tonio.[11] In addition, the court concludes that defendant's explicit consent to the search of the phone, and the fact that he offered no objection to the texts or calls attempted in his presence, sufficiently indicated his agreement to the officer's proceeding in that manner. That is, Walters could reasonably have interpreted defendant's statement that he did not care if Walters searched the phone, except for viewing "his girls," to permit him general access to the phone; defendant was physically present at the scene and had the opportunity to limit the extent of the search or to terminate the search at any time, but chose not to do so. See United States v. Garcia, 2007 WL 2230602, at *4 (S.D. Ga. 2007) aff'd, 284 F. App'x 791 (11th Cir. 2008).

### (3) Exigent circumstances

In addition, the limited search of the cell phone for recent contacts was reasonable under the exigent circumstances exception. That exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. Riley, 134 S.Ct. at 2494 (citation omitted). Such exigencies can include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury. Id. In this case, an armed suspect had robbed a confidential informant during an attempted controlled buy,

---

[11] Even if Walters actually had reached Tonio, it is not clear that defendant would have a reasonable expectation of privacy in a conversation between two other individuals – the officer and a third party – under the Fourth Amendment. See United States v. Martin, 2012 WL 6764800, at *6-7 (E.D. Mich. 2012), report and recommendation adopted, 2013 WL 55693 (E.D. Mich. 2013).

threatened murder if the victim returned, and then fled in a vehicle with the weapon and the money. According to Walters, at the time of the cell phone search at least eight officers were in the process of searching throughout the town of Clio, other nearby communities, and the surrounding rural area for the suspect. Walters testified that he accessed defendant's recent contacts because he was concerned that someone would get hurt if the armed robber sped down a back road to elude pursuit, and was stopped by a trooper or other law enforcement officer who did not know he was armed, while at the same time the suspect believed that he was being stopped for the robbery. Under these specific circumstances – in which the suspect was armed and still at large, his flight posed a danger to arresting officers or to the public, there was probable cause to believe that defendant had been in contact with the suspect and that his phone contained recent contact information, and the search was both limited in scope and roughly contemporaneous with defendant's arrest – the court deems the search of defendant's recent contact information to be objectively reasonable under the Fourth Amendment.

### b. Phone records obtained pursuant to the search warrant and administrative subpoena

The government obtained two other kinds of cell phone records in this case: (1) digital records resulting from the government's search of the cell phone pursuant to the warrant issued by Judge Coody, and (2) toll records secured through an administrative subpoena directed to defendant's telephone service provider. Both sets of records confirmed that defendant communicated with Antonio Richards before the robbery.

As to the phone records obtained pursuant to the search warrant, the district judge has ruled in this case that defendant failed to meet his preliminary burden under Franks v. Delaware, 438 U.S. 154 (1978) with respect to the alleged search warrant omissions and is not, therefore, entitled to a

hearing or other relief on this basis. Doc. 69. With regard to the toll records obtained through an administrative subpoena, defendant offers no specific argument for suppression of such records in his motion. To the extent that he contends that these records should be suppressed as the "fruit" of the alleged constitutional violations addressed *infra*, the motion is due to be denied for the reasons set out above.

Accordingly, for the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the remainder of defendant's motion to suppress (Doc. 39) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **8 a.m. on January 22, 2016.**[12] Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th

---

[12] The court has shortened the deadline for objection due to exigent circumstances. See Doc. 57 at 1-2. It notes that, while defendant's time to object is necessarily brief, he has had considerable opportunity prior to this date to familiarize himself with the facts, the exhibits, and the legal arguments before the court, in order to prepare for any possible objections.

Cir.1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    Done, this 20th day of January, 2016.

                                            /s/ Susan Russ Walker
                                            SUSAN RUSS WALKER
                                            CHIEF UNITED STATES MAGISTRATE JUDGE